IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTOINETTE CLAIR,                  :     CIVIL ACTION
                                   :     NO. 07-938
          Plaintiff,               :
                                   :
          v.                       :
                                   :
AGUSTA AEROSPACE CORP.,            :
                                   :
          Defendant.               :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          JANUARY 7, 2009


          Plaintiff Antoinette Clair ("Clair") brought this

lawsuit against her former employer, Agusta Aerospace Corporation

("Agusta"), alleging that her employment was illegally terminated

as a result of national origin discrimination, in violation of

Title VII and the Pennsylvania Human Relations Act ("PHRA").[1]

Clair also brings claims for a hostile work environment and

unlawful retaliation under Title VII.  Agusta moves for summary

---

[1]     In her complaint, Clair averred that Agusta's conduct
constituted sexual harassment and gender discrimination, in
violation of Title VII.  (Compl. ¶¶ 20-21, 23-26.)  Clair also
averred that Agusta discriminated against her on the basis of
age, in violation of the Age Discrimination in Employment Act
("ADEA").  (See Compl. ¶¶ 20, 27-29.)  Clair has since abandoned
her sexual harassment claim under Title VII.  (See Pl.'s Resp. to
Def.'s Mot. for Summ. J. at 10.)  Moreover, on July 11, 2008,
during oral argument on Defendant's motion for summary judgment,
Plaintiff's counsel indicated that Clair was also conceding her
gender discrimination and ADEA claims.  (See 7/11/08 Hr'g Tr.
21:22-24.)  Therefore, all of these claims will be dismissed
without further analysis by the Court.

judgment on the grounds that Clair has failed to establish a prima facie case of discrimination based on national origin or, alternatively, has failed to demonstrate that its articulated, legitimate, non-discriminatory reason for terminating her is pretextual.  With respect to Clair's Title VII claim for unlawful retaliation, Agusta argues that summary judgment should be granted because Clair has not demonstrated that she engaged in protected activity and because she has again failed to demonstrate that its non-discriminatory reason for terminating her is pretextual.  Agusta's motion for summary judgment will be granted.

I.   BACKGROUND[2]

Clair was born in Bulgaria and, according to her complaint, speaks with a "pronounced Bulgarian accent."  (Compl. ¶¶ 16-17.)  On July 8, 2004, Clair was hired by Agusta, an Italian firm engaged in the production, sale and maintenance of helicopters, as a purchasing agent in their Materials Department. Clair's job required her to communicate daily with members of her own department who were located in Philadelphia, and with employees of Agusta's parent facility in Italy.  Indeed, Clair

---

[2]     In considering the instant motion, the Court relied on either uncontested facts or, if the facts were disputed, viewed the facts in the light most favorable to Clair.

was hired primarily because of her Italian language skills. While employed by Agusta, Clair reported directly to John Corney, Manager of the Materials Department.  Her department head, however, was Karyn Kellett.[3]

Like all employees, Clair was subject to Augusta's written email policy, which prohibits the "[s]end[ing] or forward[ing] [of] emails containing libelous, defamatory, offensive, racist, or obscene remarks."  (Def.'s Mot. for Summ. J., Ex. A ("Corney Decl.") Ex. 1.)  Further, the policy explicitly states that Agusta "reserves the right to take disciplinary action, including termination and/or legal action" where there is evidence that an employee has violated the email policy.  (Id.)

During the course of her employment at Agusta, Clair's co-workers made several comments regarding her native Bulgaria that she viewed as ethnically offensive.  (Compl. ¶ 20.) Additionally, Clair felt that she was subjected to "constant yelling and abuse."  (Pl.'s Resp. to Def.'s Mtn. for Summ. J. at 9.)  The conduct of one co-worker, Annabelle DeSantiago, was

_____

[3]     According to Agusta, Clair reported directly to Karyn Kellett, Supervisor of the Materials Department, who in turn reported to John Corney, Manager of the Materials Department.

- 3 -

particularly upsetting to Clair.  In November 2005, Clair and

DeSantiago were involved in a verbal "altercation" at the

office.[4]  Following this confrontation, DeSantiago stopped

communicating with Clair entirely.  Eventually, Clair and

DeSantiago resumed contact but their working relationship

remained strained.  For example, DeSantiago sent business-related

emails to Clair, to which she responded verbally or not at all.

On December 7, 2005, both Clair and DeSantiago were issued formal

"Counseling Reports," which addressed their violation of Agusta's

email policy.  (See Corney Decl. Ex. 2 (noting that Clair had

failed to respond to DeSantiago's routine business emails and

that both women attacked "each other verbally and personally

through the Email system."))

On January 20, 2006, Clair forwarded an email from

DeSantiago to her Italian counterpart.  The original email

contained an urgent parts request, but Clair added language

describing DeSantiago as "la serpente," or "the snake" in

Italian.  Later, Clair sent this email back to DeSantiago, who

then complained to Agusta's management about being called "the

snake."  Clair was issued a second "Counseling Report" on January

24, 2006, which plainly stated that her "defamatory email against

---

[4]     Although Clair does not identify the root cause of this
"altercation," Agusta has suggested that Clair and DeSantiago
"had a shouting match regarding the proper use and allocation of
office supplies."  (Corney Decl. ¶ 23.)

Annabelle" was "in [v]iolation of company policy."  (Corney Decl. Ex. 3.)

On March 17, 2006, Clair wrote an email to Ms. Gerrold, an Augusta Human Resources representative.  In her email, Clair wrote "What don't you come and stay for a week on my place and stand what I stand here and call please the Commission for Equal Opportunity Employer to see the truth and don't talk stupid things if you don't want to believe what I tell you and if you don't know the truth."  (Pl.'s Statement of Facts Ex. F.)[5]

Shortly thereafter, on March 23, 2006, Clair sent an email to John Corney, accusing DeSantiago of "illegal" and "intentionally abnormal" behavior.  In this email, Clair referred to DeSantiago as "The Mexican" and described her as "an ambitious and malicious girl."  Clair also complained that Corney "can't manage a girl who has half your age and come [sic] from the lowest level of society."  (Corney Decl. Ex. 5.)  Approximately one week later, on March 31, 2006, Clair was terminated.


II.  LEGAL STANDARD

A.  Motion for Summary Judgment under Rule 56

A court may grant summary judgment when "the pleadings,

---

[5]     The parties dispute whether this statement constitutes protected activity under Title VII (i.e. a "threat" to file a complaint with the Equal Opportunity Employment Commission).  The parties do not dispute, however, that Clair made the statement. (See 7/11/08 Hr'g Tr. 10:6-23; id. 20:18-24.)

the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).   A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law.   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).   An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.   <u>Id.</u> at 248-49.   "In considering the evidence, the court should draw all reasonable inferences against the moving party." <u>El v. Se. Pa. Transp. Auth.</u>, 479 F.3d 232, 238 (3d Cir. 2007). However, while the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather its response must - by affidavits or as otherwise provided in [Rule 56] - set out specific facts showing a genuine issue for trial."   Fed. R. Civ. P. 56(e)(2).

B.   <u>Title VII</u>

Title VII protects employees from discrimination by their employers on the basis of race, color, religion, sex or national origin.   42 U.S.C. § 2000e-2.   To prevail on a

discrimination claim based on indirect evidence,[6] an employee may rely upon the familiar three-step burden shifting analysis under McDonnell Douglas Corp. v. Green. 411 U.S. 792 (1973). First, a plaintiff must establish a prima facie case for discrimination. Id. at 802. That is, a plaintiff must demonstrate 1) that she is a member of a protected class; 2) that she was qualified for the position in question; 3) that she was discharged; and 4) that she was terminated "'under circumstances that give rise to an inference of unlawful discrimination.'" Waldron v. SL Indus. Inc., 56 F.3d 491, 494 (3d Cir. 2005) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). The Third Circuit has adopted a flexible view of this test, rejecting the requirement that a plaintiff compare herself to a similarly situated individual from outside her protected class to raise an inference of unlawful discrimination. See Sarullo v. United States Postal Serv., 352 F.3d 789, 798 n.7 (3d Cir. 2003). Importantly, however, a plaintiff "must establish some causal nexus between his membership in a protected class" and the adverse employment decision complained of. Id.

Establishing a prima facie case creates the presumption of unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509

---

[6]     Plaintiff does not claim that she has direct evidence of discrimination. Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (explaining that without direct evidence of discrimination, a plaintiff must proceed under the McDonnell Douglas framework).

U.S. 502, 506 (1993).[7]  Then, the burden of production shifts to
defendant to set forth a legitimate, non-discriminatory reason
for its action.  Id.  Notably, the Third Circuit has held that
this is a "relatively light burden" because the defendant "need
not prove that the tendered reason actually motivated its
behavior" but only that it may have.  Fuentes v. Perskie, 32 F.3d
759, 769 (3d Cir. 1994).

Upon defendant advancing such a reason, the presumption
of unlawful discrimination "'is rebutted' . . . and 'drops from
the case.'"  St. Mary's Honor Ctr., 509 U.S. at 507 (quoting
Burdine, 450 U.S. at 255 & n.10 (internal citation omitted)).
Then, plaintiff must be given the opportunity to "show by a
preponderance of the evidence that the employer's explanation is
pretextual."  Fuentes, 32 F.3d at 763; see also id. at 764
(noting that a Title VII plaintiff may not "avoid summary
judgment simply by arguing that the factfinder need not believe
the defendant's proffered legitimate explanations").  To
demonstrate pretext, plaintiff must provide evidence that would
allow a fact finder reasonably to "(1) disbelieve the employer's
articulated legitimate reasons; or (2) believe that an invidious
discriminatory reason was more likely than not the motivating or

---

[7]     Although the McDonnell Douglas framework shifts the
burden of production to defendant, the ultimate burden of
persuasion always remains with plaintiff.  Tex. Dep't of Cmty.
Affairs v. Burdine, 450 U.S. 248, 253 (1981).

determinative cause of the employer's action."  Id. at 764.

Finally, "[c]laims under the PHRA are interpreted coextensively with Title VII claims."  Atkinson v. Lafayette College, 460 F.3d 447, 454 n.6 (3d Cir. 2006).  As such, the Court's holding with regard to Plaintiff's Title VII claims will also apply to Plaintiff's claims under the PHRA.


III. DISCUSSION

A.   National Origin:  Discrimination

It is undisputed that Clair can establish the first three elements of a prima facie case of unlawful discrimination based on national origin.  Clair is a member of a protected class (Bulgarian), was qualified for her position as a purchasing agent in Agusta's Materials Department, and was terminated.  (Corney Decl. ¶¶ 16, 36.)  The parties dispute, however, whether Clair has established the fourth prong of the prima facie case - that she was terminated "'under circumstances that give rise to an inference of unlawful discrimination.'"  Waldron, 56 F.3d at 494 (quoting Burdine, 450 U.S. at 253).

The Third Circuit has held that a plaintiff may demonstrate that the decision to terminate her was likely motivated by discriminatory animus where "those exhibiting discriminatory animus influenced or participated in the decision to terminate."  Abramson v. William Patterson College of New

Jersey, 260 F.3d 265, 285-86 (3d Cir. 2001).  Clair argues that her supervisor, Karyn Kellett, was "discriminating against her [and] was also involved in the termination decision."  (7/11/08 Hr'g Tr. 21:6-9.)[8]  Specifically, Clair avers that, at some point during the twenty-one months that Kellett supervised her, Kellett said "I don't care about your Bulgarian education and your Bulgarian degrees."  (Pl.'s Dep. 188:13-16.)  Clair also avers that Kellett participated in the decision to terminate her. (7/11/08 Hr'g Tr. 21:14-8; Pl.'s Resp. to Def.'s Mot. for Summ. J. at 7.)

Agusta argues that, even if Kellett made the alleged discriminatory comment, Clair has failed to demonstrate the required nexus between the alleged discriminatory animus and her termination, because the record does not support that Kellett played a role in the decision to terminate Clair.  After reviewing the record closely, Kellett's participation, if any, in the decision to terminate Clair remains unclear.[9]  So for the

---

[8]     Clair did not rely on <u>Abramson</u> in her summary judgment papers but because her counsel relied on this case during oral argument, the Court will address it here.  (7/11/08 Hr'g Tr. 21:10-18.)  In doing so, the Court notes that it is not entirely clear whether Clair intended to rely on <u>Abramson</u> to establish her prima facie case or to rebut Agusta's legitimate, non-discriminatory reason for terminating her.  However, the Court has addressed it as part of the prima facie analysis in an effort to construe the facts in the light most favorable to Clair.

[9]     Defense counsel explained that Kellett "participated after the fact" in the decision to terminate Clair.  (7/11/08 Hr'g Tr. 22:18-19.)  Further, defense counsel also stated that

purposes of this analysis and viewing the facts in the light most favorable to Clair, the Court will assume that Kellett directed a discriminatory comment towards Clair[10] and that she "influenced or participated in the decision to terminate" Clair.  Thus, Clair has established the fourth prong of the flexible prima facie test.  Abramson, 260 F.3d at 285-86.

At the second step of the McDonnell Douglas analysis, Agusta has advanced a legitimate, non-discriminatory reason for

---

there is no "evidence in the record except for a one-sentence statement in a position statement that Ms. Kellett had anything to do with the termination and I think a close analysis of the facts of record and the cases would substantiate that, she did not play an outcome-determinative role in that decision." (7/11/08 Hr'g Tr. 23:8-13.)

Unfortunately, neither party explains fully the position statement, which defense counsel referred to during oral argument and upon which Clair relies.  From documents in the record, it appears that this position statement was submitted to the U.S. Equal Employment Opportunity Commission ("EEOC") by Agusta on October 10, 2006.  (Pl.'s Resp. to Def.'s Statement of Facts, Ex. D.)  In it, Agusta wrote that "[t]he decision to terminate Clair was approved by all Kellett, Corney, Janice Gerrold, Human Resources Manager, Paolo Ferrari, Director of Product Support, and Vincent Genovese, Executive Vice-President." (Id. at 4.)  Arguably, this statement conflicts with Agusta's later statement that the decision to terminate Clair was made by John Corney, with the approval of Janice Gerrold and Vincent Genovese.  (Corney Decl. ¶¶ 36-38.)

As explained above, for the purposes of this analysis, the Court will assume arguendo that Kellett's involvement in the decision to terminate Clair meets the minimal standard set out by the Third Circuit in Abramson.  Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 285-86 (3d Cir. 2001).

[10]   The Court notes that without more context, the comment attributed to Kellett could be construed, at best, as vaguely discriminatory.  See infra Part III.B.

- 11 -

its decision to terminate Clair.  Namely, her repeated violations
of the company's written email policy and her inability to work
cooperatively with Ms. DeSantiago.  (Corney Decl. ¶¶ 35-36.)
Agusta further points out that Clair's termination was "the final
step in a course of progressive discipline" and that failure to
terminate Clair after receiving her March 23, 2006 email, which
contained "derogatory and offensive and possibly illegal"
references to Ms. DeSantiago, would have placed the company at
risk.  (Def.'s Mtn. for Summ. J. at 1; Corney Decl. ¶¶ 35-37.)

    Clair's claim fails at the third step of the McDonnell
Douglas analysis.  First, Clair argues that Agusta's inconsistent
"stories" regarding the reason for her termination demonstrate
that each is pretextual.  (Pl.'s Resp. to Def.'s Mot. for Summ.
J. at 6.)  Specifically, Clair contrasts Agusta's October 10,
2006 position statement to the EEOC, in which Agusta partially
attributed Clair's termination to an April 3, 2006 email in which
she threatened to kill Karyn Kellett, with the declaration of
John Corney, which attributed Clair's termination to a March 23,
2006 email in which she made offensive comments regarding Ms.
DeSantiago.  (Id.; compare Pl.'s Resp. to Def.'s Statement of
Facts, Ex. D at 4, with Corney Decl. ¶¶ 35-37.)

    In response, Agusta acknowledges that its position
statement to the EEOC "inadvertently identified [the] April 3rd

- 12 -

e-mail" as a factor in Clair's termination, but argues that "this factual misstatement does not demonstrate pretext." (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 12.) Rather, Agusta maintains that Clair's termination resulted from her March 23, 2006 email to John Corney, which represented her third violation of the company's email policy.[11] (Id.) Moreover, Agusta argues that Clair's own deposition testimony, in which she acknowledges that she was fired for sending the March 23, 2006 email, undermines her pretext argument. (Id. at 12-13.)

While it is true that a plaintiff may rely on "inconsistencies" and "contradictions" to demonstrate pretext, pointing to a single inconsistency does not automatically overcome a legitimate, non-discriminatory reason for termination. See Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 649 n.15 (3d Cir. 1998) (discussing inconsistencies in an EEOC position statement and noting that "'the mere fact that a defendant relies on a post hoc [explanation] does not in and of itself create a factual dispute about whether the [explanation

---

[11]     Moreover, as defense counsel explained to the Court during oral argument, although its position statement to the EEOC mistakenly "cited the April 3rd email as the ultimate act . . . rather than the March 23rd email . . . . it's important for the Court to note that the company has never changed its position, it has always argued in its position statement and otherwise that the reason for plaintiff's termination was the violation of the email policy." (7/11/08 Hr'g Tr. 8:3-14.)

was] pretextual.' . . . The plaintiff must point to evidence that demonstrates there is reason to disbelieve the explanation." (quoting Healy v. New York Life Ins. Co., 860 F.2d 1209, 1215 (3d Cir. 1988))); see also Schaefer v. Independence Blue Cross, Inc., No. Civ. A. 03-CV-5897, 2005 WL 181910, at *1 (E.D. Pa. Jan. 26, 2005) (noting that "discrepancies between Defendant's position statements to the EEOC and later explanations are not per se evidence of pretext").  In this case, the single inconsistency upon which Clair relies is, under the circumstances, insufficient to disprove Agusta's articulated legitimate, non-discriminatory reason for terminating Clair, particularly in light of the fact that Agusta's explanation of the inconsistency is plausible and reasonable.

Second, Clair argues that Agusta's reason for terminating her is pretextual because it selectively enforced its anti-discrimination and civility policies.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6.)  Plaintiff points to nothing in the record, however, to support this claim.  In fact, the record supports the opposite conclusion.  Both Clair and DeSantiago received counseling reports for inappropriate email usage and, as defense counsel argued to the Court, "there is no evidence of record that anybody else engaged in any kind of conduct like this

and was not treated in exactly the same way". (See 7/11/08 Hr'g Tr. 26:25-27:1-9.)[12]

For these reasons, Clair has failed to show by a preponderance of the evidence that Agusta's legitimate, non-discriminatory reason for terminating her employment is pretextual. Fuentes, 32 F.3d at 763. Thus, Agusta is entitled to summary judgment on Clair's Title VII and PHRA claims for disparate treatment due to unlawful national origin discrimination.

B.   National Origin:  Hostile Work Environment

"A hostile work environment . . . typically comprises a succession of harassing acts, each of which 'may not be actionable on its own.'" Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2175 (2007) (citing AMTRAK v. Morgan, 536 U.S. 101, 114-15 (2002)).  The actionable wrong is the environment as a whole, not the discrete acts that create the environment.  Id.

In order to establish a hostile work environment claim

---

[12]   The Court notes Clair's argument that it should disregard her March 23, 2006 email because it was "sent confidentially."  (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6.) Given that Clair offers no legal support for this argument, the Court will not consider it further.

under Title VII, Plaintiff must show: (1) she suffered intentional discrimination because of her national origin; (2) the discrimination was pervasive and regular; (3) it detrimentally affected her; (4) it would have detrimentally affected a reasonable person of the same protected class in this position; and (5) there is a basis for vicarious liability. Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001). Importantly, "[t]he plaintiff must subjectively perceive the environment to be hostile or abusive, and conditions must be such that a reasonable person would have the same perception." Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 715 (3d Cir. 1997); see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998) (holding Title VII should not be construed as a general civility code); Harris v. Forklift Sys., 510 U.S. 17, 21 (1993) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 60 (1986) (holding that the "mere utterance of an . . . epithet which engenders offensive feelings in a employee . . . does not sufficiently affect the conditions of employment to implicate Title VII")).

In evaluating a hostile work environment claim under Title VII, offhand comments and isolated incidents (unless extremely serious) are not sufficient to sustain a viable cause of action. Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788

(1998)); see also Fuentes, 32 F.3d at 767 ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight . . . ." (quoting Ezold v. Wolf, Block, Schorr and Soils Cohen, 983 F.2d 509, 545 (3d Cir. 1992))).   Instead, the allegedly offensive conduct must be "extreme" and constitute a "'change in the terms and conditions of employment.'"   Caver, 420 F.3d at 262 (citing Faragher, 524 U.S. at 788.)

Clair bases her claim of a hostile work environment on five remarks by her co-workers that explicitly reference her national origin, as well as the "constant atmosphere of harassment and yelling," which she alleges characterizes her employment at Agusta.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 9.)  This claim fails as a matter of law because Clair cannot establish either the second or fourth prong of the test for a hostile work environment.[13]

In support of her hostile work environment claim, Clair relies on the following five statements, which were allegedly made by her co-workers:

1)   "Here is not Bulgaria, here is America"[14];

---

[13]   The parties do not substantively dispute the first, third or fifth prongs of the test for a hostile work environment.

[14]   Pl.'s Dep. 185:6-10.

2)   "Something like 'education in universities, whatever, in Bulgaria are low level . . . so low that that's why they are not recognized in the world'"[15];

3)   "I will never take [a] pill from Bulgaria. Bulgaria, I don't even think about that because I don't know how they are made"[16];

4)   "I can sing and listen at the same time.  You are always so special.  Are all people from Bulgaria so special like you?"[17]; and

5)   "I don't care about your Bulgarian education and your Bulgarian degrees."[18]

Clair argues that she has established pervasive discrimination because these statements, "create a causal connection between [the constant] harassment" she experienced and her national origin.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 9.)  This is not the case.  As an initial matter, these statements are vague and don't necessarily evidence a clear discriminatory intent.  However, even assuming that these statements were intentionally discriminatory, taken together,

---

[15]   Id. at 185:17-23.

[16]   Id. at 186:2-11.

[17]   Id. at 187:3-11.

[18]   Id. at 188:13-16.

five stray remarks by co-workers during the course of a twenty-one month employment do not amount to pervasive and regular discrimination as a matter of law.  See Pineda v. Phila. Media Holdings LLC, 542 F. Supp. 2d 419, 428-29 (E.D. Pa. 2008) (holding that sporadic comments like "what kind of Puerto Rican are you?" made by plaintiff's co-workers were not "pervasive and regular" for the purpose of a hostile work environment claim); Barbosa v. Tribune Co., No. Civ. A. 01-CV-1262, 2003 WL 22238984, *3 (E.D. Pa. Sept. 23, 2003) (finding that the alleged discrimination was not "pervasive and regular" where plaintiff could only point to seven specific comments during eighteen months of employment).  Thus, Clair has failed to establish the second prong - "pervasive and regular" discrimination.[19]

Equally fatal to her claim is Clair's inability to establish the fourth prong - that the treatment she complains of would have detrimentally affected a reasonable person of the same protected class in her position.  The purpose of this hurdle is

_____

[19]    Additionally, the Court notes that while Clair testified generally at her deposition that Kellett yelled at her and treated her differently, she did not offer specific examples or other evidence of such treatment.  (Pl.'s Dep. 53:7-8.)  At the summary judgment stage, such generalized allegations are deficient as a matter of law.  See Robinson v. Natl. Med. Care, Inc., 897 F. Supp. 184, 187 (E.D. Pa. 1995) (noting that where plaintiff could not recall specific instances of disparate treatment, his subjective beliefs were insufficient to withstand a motion for summary judgment.)  This is so because in their absence, Clair fails to meet her burden of pointing to the existence of a genuine issue of material fact in the record.  See Fed. R. Civ. P. 56(c).

to put "a check on the overly sensitive plaintiff who is unreasonably affected by acts of discrimination." <u>Koschoff v. Henderson</u>, 109 F. Supp. 2d 332, 348 (E.D. Pa. 2000).  Here, Clair has conceded that she was hypersensitive.  <u>See</u> Pl.'s Dep. 246:24-247:17 (admitting to crying "for the rest of the day" when told by her supervisor to be more aggressive when asking for parts); <u>id.</u> at 35:11-12 (admitting to crying two-three days out of every five).  Other record evidence also supports this conclusion. (Corney Decl. ¶¶ 18, 40 (noting that Clair "was often observed by her coworkers to be sobbing or crying in her cubicle" and that "[u]pon being advised that she was terminated, Plaintiff literally began to sob.  She then collapsed, slumped to the floor and was not responsive").

For these reasons, Agusta is entitled to summary judgment on Clair's Title VII and PHRA claims for hostile work environment due to unlawful national origin discrimination.


C.   <u>Retaliation</u>

Title VII also protects those individuals who file claims of discrimination, or who otherwise oppose discriminatory practices, from retaliation.  <u>Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc.</u>, 450 F.3d 130, 134 (3d Cir. 2006). Retaliation in an employment context is analyzed under the same burden-shifting rubric that is used for discrimination claims.

Shellenberger v. Summit Bancorp, 318 F.3d 183, 187 (3d Cir. 2003); Waddell v. Small Tube Products Inc., 799 F.2d 69, 73 (3d Cir. 1986).  First, a plaintiff must make out a prima facie case to shift the burden of production to defendant to set forth a legitimate, non-discriminatory reason for its action.  If defendant is successful, plaintiff must show that defendant's stated reason for the adverse employment action was merely a pretext for discrimination.  Shellenberger, 318 F.3d at 187.

        To succeed in establishing a prima facie case in a retaliation claim, a plaintiff must show: (1) that she was engaged in a protected activity; (2) that her employer took adverse action against her; and (3) that a causal link exists between the protected activity and the employer's adverse action.  Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007).

        Clair contends that she engaged in protected activities that ultimately led to her termination.  First, she argues that her multiple complaints to her supervisors constitute informal grievances about discriminatory behavior, and therefore, are protected.  See Barber v. CSX Distrib. Servs., 68 F.3d 694, 701 (3d Cir. 1995).  Second, Clair contends that her March 17, 2006 email to Ms. Gerrold, in which she referenced the "Commission for Equal Opportunity Employer" was a threat to file a claim with the EEOC for discrimination, a protected activity.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4.)  Because the Court finds below

that Clair's March 17, 2006 email constituted protected activity,
it will not substantively discuss the informal complaints to her
supervisors.[20]

Agusta argues that Clair's March 17, 2006 email to Ms.
Gerrold does not constitute protected activity because its
"tortured language . . . does not complain of discrimination or
harassment based on . . . national origin" and because it does

---

[20]    The Court does note, however, that the parties dispute
whether these informal complaints constitute protected activity.
Agusta maintains that Clair never articulated her belief that she
was being discriminated against on the basis of her national
origin.  (Def.'s Mtn. for Summ. J. at 17-18.)  Rather, Agusta
argues that Clair's complaints were of unfair treatment
generally, such as, "I wanted to specify [sic] what is her reason
to treat me differently," and "but I complained generally from
her behavior and I point to some examples where she yelled at me
and treated me differently from the other people in the office."
(Pl.'s Dep. 31:9-11; 111:9-23.)  This is insufficient, Agusta
argues, to establish protected activity.  See Barber v. CSX
Distrib. Servs., 68 F.3d 694, 701-702 (3d Cir. 1995) (holding
that plaintiff's failure to allege that the cause of the
perceived discrimination was his age precluded a showing that he
was engaged in protected conduct); Seldon v. Natl. R.R. Passenger
Corp., 452 F. Supp. 2d 604, 601 (E.D. Pa. 2006) (general
expressions of dissatisfaction do not constitute protected
activities).

Clair has testified though that, on at least one
occasion, she conveyed to Vincent Genovese that "my thoughts were
that I am treated like that because I'm a foreigner and because I
noticed other -- her expressions about, well, hating foreigners.
But I didn't tell him that.  I told him that I think she behaves
with me like that because I'm a foreigner . . . ."  (Pl.'s Dep.
113:14-20.)

Since Clair's March 17, 2006 email provides an adequate
ground for the Court to consider her retaliation claim, the Court
will not attempt to resolve this dispute here.

not indicate that Clair "intended to file a charge with the EEOC." (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5.)  While a literal reading of Clair's March 17, 2006 email supports this interpretation, for the purposes of evaluating Agusta's motion for summary judgment, the Court will assume that it was in fact protected conduct.[21]  Given this assumption, the one week time lapse between Plaintiff's "threat" and her termination is sufficient to establish a causal link between the protected activity and the adverse action.[22]  Thus, Clair can successfully establish a prima facie case for unlawful retaliation.

Still, Clair's claim for unlawful retaliation suffers the same inadequacy as her claim for disparate treatment based on

---

[21]     In making this assumption, the Court is mindful that English is Clair's third language, and that, by her own admission, she does not write like "a native English speaker." (7/11/08 Hr'g Tr. 17:14-21.)

[22]     "A broad array of evidence" should be considered when assessing whether such a causal link has been shown to survive a summary judgment motion.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 285 (3d Cir. 2000).  When the temporal proximity between the protected activity and the adverse action is "unusually suggestive," that alone can create an inference of causality.  Clark Cty. School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (affirming that while no bright-line rule exists, temporal proximity must be very close); Fasold v. Justice, 409 F.3d 178, 189 (3d Cir. 2005) (holding that three months might suffice to demonstrate a causal link).  Here, Clair was terminated fourteen days after sending the email to Ms. Gerrold, which satisfies this proximity requirement.

national origin; she cannot demonstrate that Agusta's legitimate, non-discriminatory reason for terminating her, namely that she repeatedly violated the office email policy, was pretextual.  As such, summary judgment is appropriate for Agusta on Clair's claim of unlawful retaliation.


IV. CONCLUSION

        For these reasons, Agusta's motion for summary judgment shall be granted.  An appropriate order will issue.

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTOINETTE CLAIR,            :    CIVIL ACTION
                             :    NO. 07-938
        Plaintiff,           :
                             :
        v.                   :
                             :
AGUSTA AEROSPACE CORP.,      :
                             :
        Defendant.           :
```

## O R D E R

**AND NOW,** this **7th** day of **January 2009,** upon

consideration of Defendant's motion for summary judgment (doc.

no. 27), it is hereby **ORDERED** that the motion shall be **GRANTED.**

**IT IS FURTHER ORDERED** that the case shall be marked

**CLOSED.**

**AND IT IS SO ORDERED.**

> _S/Eduardo C. Robreno_____
> **EDUARDO C. ROBRENO, J.**